## Hiester *against* Laird.

It is error to permit a witness to testify respecting a fact of which he has not the means of knowledge.

In ejectment the declarations of a deceased occupant of land, respecting the title, made against his interest, have always been received in evidence.

If a purchaser of land, either at sheriff's or treasurer's sale, take possession of a wrong tract, under a mistaken impression as to its location and identity, this will not preclude him, when he discovers his mistake, from asserting his right to that which he did purchase.

In the trial of a civil suit, the jury must determine facts upon the weight of evidence; and a direction from the court that they must be "*conclusively* convinced," or that "there must be no doubt resting on their minds" as to any particular point, is erroneous.

ERROR to the Common Pleas of *Schuylkill* county.

This was an ejectment by Isaac Hiester against Samuel Laird to recover 407 acres and 157 perches of land in Rush township.

The facts of this case and the points raised, are so clearly stated in the opinion of the court, that they need not be repeated. The cause was argued by

*Hoffman* and *Greenough*, for plaintiff in error.

*Bannan*, for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—This is an ejectment for a tract of 407 acres 157 perches, situated in Rush township, Schuylkill county. The plaintiff gave in evidence a warrant, dated 28th of January 1793, in the name of John Kunckel, for 400 acres. A survey, in pursu-

ance thereof, by George Palmer, D. S., of 407 acres, and allowance, made 21st of May 1794.   A patent to John Kunckel on the 12th of September 1796.   The triennial assessment of Rush township for the year 1820, Kunckel, John, 400 acres, Ptd. L. 0.05, $20; tax 0.08.   Also, the transcript for 1821, Kunckel, John, 400, P. 0.05, $20; tax, 0.08.   Also, record of taxes, 1820, John Kunckel, tax 0.08; 1821, John Kunckel, tax 0.08.   In 1821, the collector credited for this tax, returned by him unpaid.   The plaintiff then proved, by the clerk of the commissioners, that certain books were the records of the assessments of Rush township; that they contain the unseated as well as the seated lands; that it was the custom sometimes to bring in the unseated and seated lands, all intermixed; that they generally brought in the unseated lands under the head of "non-residents," but not in every instance; that he finds no separate list of unseated lands in the years 1820, 1821, in Rush township on those assessments.   Wherever they had a separate reading, called "non-residents," it was on the same list with the assessments; has no recollection of any separate list while he was clerk of the commissioners.   The tract in the warrantee name of John Kunckel, was not seated in 1820 or 1821.   It is now seated.   If one man owned four, six, or ten tracts, and lived on them, they would be called seated lands.   He instances the case of the Benjamin R. Morgan lands, which lie all in one body, and some of the tracts are unseated.   The plaintiff also produced the book of sales, in which is the following entry: 1822, June 11th, 400 acres, John Kunckel, 0.90, commissioners, $3.37½.   The plaintiff then gave in evidence a deed, dated 6th of July 1822, Jacob Huntzinger, treasurer of Schuylkill county, to Messrs Reifschneider, Pott, and Seltzer, commissioners, consideration $3.37½, the taxes and costs for a tract of land, surveyed to ―― owned by John Kunckel, &c.   The plaintiff then gave in evidence a book, which the clerk proved to be a record found in the commissioners' office, a record kept by the commissioners, of unseated land bought by them.   In that is this entry: taxes, &c., 0.90; taxes in 1823, 1824, 1825, 1826, 1827, $1.12, $5.60—sold to George Grim and Peter Zehner.   A deed, dated 8th of December 1827, from Henry Shoemaker, Ludwig Bergen, and John Motz, commissioners of Schuylkill county, to George Grim and Peter Zehner, consideration, $14.50, for a tract of unseated land in Rush township, Schuylkill county, containing 400 acres, be the same more or less.   It being the same tract of land, which having been rated and assessed, with divers county and road taxes, which remained unpaid, was by Jacob Huntzinger, treasurer, &c., by deed, bearing date 6th of July 1822, as the property of John Kunckel, granted to the commissioners of Schuylkill county, &c.   He then gave in evidence a deed, George Grim and wife to Charles Frailey, consideration, $400 for the moiety or equal half-part, describ-

[Hiester v. Laird.]

ing the tracts, as in the patent 407 acres and 157 perches and allowance. Deed, dated 12th of February 1830, Peter Zehner and wife, to Daniel J. Hiester, John Shoener, Jr., Benjamin Nehf and William Clark for the other moiety. By several mesne conveyances, which were given in evidence, it is proved that the title to the whole tract is vested in the plaintiff, Isaac Hiester.

The principal matter of defence is as to the identity of the tract of land. The defendant denied that the property assessed and sold, was the tract in controversy; he alleged that the description applies as well, if not better, to another tract of land, which belonged to John Kunckel, situated in the same township, and county; that the description, when applied to the various properties held or owned in that township by the same individual, was so uncertain, that the assessment and sale are void; and that in truth the purchaser, supposing the description applied to another tract, elected to take that tract under the purchase. To this point, the evidence of the defendant was directed; the admission of which forms the subject of complaint. That the description in the deed tallies with the tract in controversy, in several important particulars, must be conceded; and that in the absence of any countervailing proof, it would be reasonably descriptive, can not admit of doubt. In short, the plaintiff made out such a *prima facie* case, as would, if not rebutted, have entitled him to a verdict. He proved that a warrant was granted to John Kunckel, for 400 acres of land; that a survey was made and returned upon it; and that a patent was issued for it. That in the triennial assessment for that township in which the land is situated, a patented tract for 400 acres is assessed in the name of John Kunckel, for the years 1820 and 1821. That the taxes being unpaid, it was sold for the payment of taxes for those years, and purchased by the commissioners of the county, who afterwards sold the same to Grim and Zehner, by whom it was sold and conveyed, and subsequently became vested in the plaintiff by several mesne conveyances, all of which are in evidence. In opposition to this case, the defendant also gave in evidence the patent to John Kunckel, for 407 acres and 157 perches; the will of Kunckel, and a deed from Sarah W. Tyson and Philip C. Kunckel to Samuel Laird, the defendant. He also gave in evidence divers applications and warrants for land, in Rush township, in the name of John Kunckel and others, and particularly a warrant to Martin Deal, 400 acres, dated the 23d of April 1792, and a survey, 24th of April 1793, by George Palmer, D. S., at the head of Quacake for 406¼ acres. This tract is situated partly in Rush township, Schuylkill county, and partly in Northampton county; 50 acres of it are in the latter county. The defendant contends that this is the tract assessed. And, for this purpose, he offers the proof contained in the first bill; this was admitted in part by

the court, but it is unnecessary to determine whether in this there was error, as it would seem to me the defendant altogether failed in giving the proof offered.    He then (after having proved, as a preliminary, the list of road taxes for Rush township, in which this entry is made: 1820, John Kunckel, 10 cents; John Braus and Peter Zehner, supervisors, Nov. 9th, 1820, sold 1821 ; John Kunckel, 10 cents, ent. Sept. 12th, 1822 ; and that there was no return for those years, except what is entered in this book,) called John Braus, who was one of the supervisors; and, after proving by him, that they, the supervisors, had the county duplicate before them when they laid the road-tax, proposed to ask the witness, to what land the road-tax, assessed in the name of John Kunckel, in 1820 and 1821, applied.   The admission of this evidence is the subject of the second bill.    The fifth section of the Act of 1802, makes *it* the duty of the supervisor to call to his assistance the township assessor, and they together make the assessment from the last valuation of property in the township.   In the performance of that duty, the supervisors had the county duplicate before them ; but it nowhere appears that they ever saw the land, or that they had any other means of knowledge as to the identity of the tract assessed than any other individual would have had who had the inspection of the assessment, or of the county duplicate.    The evidence, therefore, amounts to nothing more nor less than an opinion as to what tract the road-tax for those years referred, without, as I can understand, any peculiar means of knowledge on the part of the witness.    The evidence on this point was erroneously received.    After the admission of the testimony, the witness proceeded to say, we know nothing of Kunckel's lands, except the one at Quacake, which we call the Quacake Spring, in Rush township, a little below the spring, in the valley where Martin Deal lived.    This is not the place referred to (meaning the place in controversy) where Martin Deal lived when I knew him.    They also proved by a witness that he was at Martin Deal's all night, above forty years ago.    He lived in Quacake valley, pretty near the upper end of the valley.    The defendant then offered to prove the declarations of Martin Deal at that time, in regard to who owned the land on which he lived.    This testimony was admitted; whereupon, the witness proved that, on being asked why he removed into that wild country, he said Kunckel put him up there.    The land belonged to him (Kunckel) and he should move up, and try to improve the land, and he would supply him with provisions until he could raise enough for himself.

If Kunckel was the owner of the tract, which it was the object of the testimony to show, it was susceptible of better proof than the declarations of the person residing on the land, and the evidence would seem to run counter to the rule which requires the

[Hiester v. Laird.]

best evidence the nature of the case admits. But still, we have nothing to do with the weight of the evidence, for as a declaration of a deceased occupier, against his interest, such evidence has always been received. In ejectment, declarations of a person under whom the defendant claimed that he held only as tenant at sufferance, to the plaintiff, were allowed to be given in evidence by the plaintiff. *Andrews* v. *Fleming's Lessee,* (2 *Dall.* 93.) So confessions of the person under whom one of the parties claimed, made during the time when he owned the land, that his warrant and survey did not cover the land in dispute, are evidence. *Weidman* v. *Kohr,* (4 *Serg. & Rawle* 174.) In *Jackson* v. *Bard,* the declarations of a person in the possession of land as to his title, were ruled to be admissible evidence against him, and all persons claiming under him. To prove seisin in a devisor, the declarations of a deceased occupier of the land in question, that he held as his tenant, were received as evidence of that fact. *Holloway* v. *Rakes,* cited by Buller J. in *Davies* v. *Pierce,* (2 *T. R.* 55) *Uncle* v. *Watson,* (4 *Taunt.* 16.) Without such evidence, it might have been impossible to prove an occupation by the deceased tenant under a particular person, though the simple fact of his occupation must have been capable of other proof; and in addition to the circumstance of his having a peculiar knowledge of the fact, it may be observed that the declaration *was, in some degree, against his interest,* since, in case of an action by his landlord, it might have been produced as evidence against him, or against any one claiming under him. For the same reason, when the point was whether certain lands were parcel of A or B's estate, the declarations of a deceased occupier who held under A and B have been admitted in evidence. (*Peake's Ev.* 182); and in the note, *Jackson* v. *Bard,* (4 *Johns.* 233). As the declarations of Deal, who was the occupier of land, were *against his own interest,* and as they might have been given in evidence in a suit brought against him by Kunckle, and against all others claiming under him, they were admissible in evidence.

It appears that Grim and Zehner, who purchased from the commissioners, claimed the tract in the Quacake valley, on which Deal resided, as the commissioners' land. Under this impression this land was conveyed to Hiester, but afterwards Hiester having discovered, as he supposed, that they had conveyed him the wrong tract, they executed a deed for the land now in controversy. The defendant contends that this was such an election as concludes them, but we do not think so; for if a purchaser either at a sheriff's or treasurer's sale, take possession of the wrong tract, under a mistaken impression, this will not preclude him, when he discovers his mistake, from asserting his right to the land which he has really purchased. The question to be decided will be, notwithstanding, whether the land which was assessed was the iden-

I. — 32

[Hiester v. Laird.]

tical tract in controversy, with, however, the benefit of the argument to be derived from their opinion as to its location and description.

The plaintiff complains of that part of the charge in which the court say, " Does the evidence *conclusively* satisfy your minds that the tract sold in the name of John Kunckel, of 400 acres, expressly applies to this tract of 407 acres 156 perches, to the exclusion of any other 400 acre tract in the same name, in the same township. Unless it does, the plaintiff has no right to recover." And again, " Unless the jury are clearly and conclusively convinced, their verdict ought to be in favour of the defendant." When it is remembered that the tract sold was assessed as a patented tract, that the land in controversy is the only patented tract in Rush township, in the name of John Kunckel, and that it consists of the same, or nearly the same number of acres, we think the charge is not so favourable as the plaintiff had reason to expect. But what does the court mean by saying that it is necessary to a recovery that the minds of the jury should be *conclusively* satisfied, that they should be *conclusively* convinced, that it applies expressly to this tract, and no other, in the township? If they mean to lay it down as a rule of law, (and the words admit of that construction only,) that there must be *no doubt* resting on their minds, we think they were mistaken. In a civil case, the jury determine facts, on the *weight of evidence*, and there is certainly nothing peculiar in the case which forms an exception to the general rule. The question is, was the land in controversy the identical tract assessed. Of this the plaintiff had given *prima facie* evidence, by an identification of the tract with reasonable certainty. To rebut this, other testimony was adduced, which the defendant contends throws doubt upon it. Without intending to say whether this be so or not, we are of opinion that the jury should have been instructed to weigh the testimony, and to determine that point as in ordinary cases.

Judgment reversed, and a *venire de novo* awarded.